IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED SENIORS ASSOCIATION, INC., as a private attorney general,<br><br>Plaintiff,<br><br>v.<br><br>PHILIP MORRIS USA, R.J. REYNOLDS TOBACCO COMPANY, BROWN & WILLIAMSON TOBACCO CORPORATION, individually and as the successor to THE AMERICAN TOBACCO COMPANY, LORILLARD TOBACCO COMPANY, INC., and LIGGETT GROUP, INC.,<br><br>Defendants. | Case No. 05-11623 RGS |

**DEFENDANTS' MEMORANDUM OF LAW IN RESPONSE
TO BRIEF *AMICUS CURIAE* OF SENATOR CHARLES E. GRASSLEY**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 3

I.  THE TEXT, STRUCTURE, AND HISTORY OF THE MSP
    REFUTE SENATOR GRASSLEY'S INTERPRETATION OF
    THE STATUTE ............................................................................................................ 3

    A.  The Text And Structure Of The MSP Refute Senator Grassley's
        Interpretation Of The Statute ........................................................................... 3

    B.  The Legislative History Of The MSP Refutes Senator Grassley's
        Interpretation Of The Statute ........................................................................... 6

II. UNITED SENIORS DOES NOT HAVE STANDING TO
    ASSERT ANY MSP CLAIM, MUCH LESS ONE THAT
    DUPLICATES THE FEDERAL GOVERNMENT'S MSP CLAIM
    AGAINST THESE SAME DEFENDANTS ............................................................... 11

CONCLUSION ....................................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases**

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ................................................................................................. 11

*Chisom v. Roemer*, 501 U.S. 380 (1991) ................................................................ 9

*City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223 (1st Cir. 1998) ................................................................................................................... 12

*Frazer v. CNA Ins. Co.*, 374 F. Supp. 2d 1067 (N.D. Ala. 2005) .................................. 12

*Glover v. Philip Morris USA*, 380 F. Supp. 2d 1279 (M.D. Fla. 2005) ...................... passim

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ....................................................... 2, 9

*Mason v. Am. Tobacco Co.*, 346 F.3d 36 (2d Cir. 2003) ........................................ 2, 9

*Mason v. Am. Tobacco Co.*, No. 02-7923, slip op., at 2 (2d Cir. Jan. 16, 2004) ............................................................................................................. 1

*Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) ................................................... 6

*Nat'l Woodworker Mfrs. Ass'n v. NLRB*, 386 U.S. 612 (1967) ................................... 1

*Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533 (2002) ........................................ 9

*Reg'l Rail Reorganization Act Cases*, 419 U.S. 102 (1974) ........................................ 1

*Thompson v. Goetzmann*, 337 F.3d 489 (5th Cir. 2003) ................................. 7, 8, 9, 10

*United States v Philip Morris, Inc.*, 156 F. Supp. 2d 1 (D.D.C. 2001) ........................ 2, 6

*United States v. Baxter Int'l, Inc.*, 345 F.3d 866 (11th Cir. 2003) .............................. 10

*United States v. Gilman*, 347 U.S. 507 (1954) .................................................. 2, 10

*United States v. Standard Oil Co.*, 332 U.S. 301 (1947) ....................................... 3, 10

*Vermont Agency of Nat'l Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000) ..................................................................................................... 11

**Statutes**

42 U.S.C. § 1395y(2)(B)(ii) .................................................................................................. 3

42 U.S.C. § 1395y(b)(2)(B)(iii) .............................................................................................. 4

42 U.S.C. § 1395y(b)(2)(B)(iv) ........................................................................................ 6, 10

Cal. Civ. Code § 3291 ............................................................................................................ 5

**Regulations**

42 C.F.R. § 411.50(b) ............................................................................................................ 4

**Other Authorities**

149 Cong. Rec. S8499-02 (2003) ..................................................................................... 8, 10

6 Am. Jur. 2d *Assignments* § 144 ....................................................................................... 12

H.R. Rep. No. 108-178(II) (2003), *available at* 2003 WL 21690538 ................................... 7

*Waste, Fraud, and Abuse in Federal Programs: Hearing before the House
     Comm. on Ways and Means*, 108th Cong. (2003) (Statement of
     William H. Jordan), *available at* 2003 WL 21667339 .......................................... 8

**PRELIMINARY STATEMENT**

Senator Charles E. Grassley suggests that, as a sponsor of the 2003 amendment to the Medicare as Secondary Payer statute ("MSP"), he is uniquely qualified to explain Congress' intent in enacting and amending the MSP.  *See* Br. *Amicus Curiae* of Senator Charles E. Grassley ("Sen. Grassley Br.") at 1-2.  The post-enactment views of a single individual legislator, however, provide no evidence of congressional intent.  *See Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 132 (1974) (holding that *amicus* brief filed by 36 congressman "represent[ed] only the personal views of these legislators" and did not provide evidence of congressional intent); *Nat'l Woodworker Mfrs. Ass'n v. NLRB*, 386 U.S. 612, 639 n.34 (1967).  That is especially true here, where this single Senator offered this same interpretation of the MSP to the Second Circuit in *Mason* (after the 2003 amendment was enacted) and the district court in *Glover*, and both courts squarely rejected it.  *See Mason v. Am. Tobacco Co.*, No. 02-7923, slip op., at 2 (2d Cir. Jan. 16, 2004) ("*Mason* slip op."); *Glover v. Philip Morris USA*, 380 F. Supp. 2d 1279, 1290-91 (M.D. Fla. 2005), *appeal docketed*, No. 05-14219 (11th Cir. Aug. 1, 2005).[1]

The Senator's interpretation of the MSP not only ignores the plain text and structure of the statute, but also is inconsistent with its legislative history.  The text, structure, and legislative history all reveal that Congress' purpose in the MSP's 2003 amendment was *not* to authorize double-damages suits against *alleged* tortfeasors, but instead was to ensure that the MSP enforcement provisions would apply to settlement funds and other uninsured entities whose responsibility for Medicare costs has been

---

[1]  Notably, no other legislator joined Senator Grassley in any of his *amicus* briefs in *Mason*, *Glover*, or this case.

established. Senator Grassley is seeking to obtain through judicial fiat a statute that he never asked Congress to enact and that Congress in fact never enacted. The undisputable fact is that, in proposing, debating, and enacting the MSP's 2003 amendment, neither he nor any other member of Congress expressed any intent to authorize a private plaintiff to assert an unadjudicated state-law tort claim for double damages in federal court. Nor can such an intent be inferred. Given that 41 million people are currently enrolled in Medicare, Senator Grassley's interpretation would have the radical effect of shifting huge numbers of garden variety state tort claims from state to federal courts and substantially federalize tort law. Courts have recognized that, when regulating sensitive areas affecting the federal-state balance, Congress must make "its intention to do so unmistakably clear in the language of the statute." *Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991) (internal citation and quotation marks omitted). No such clear intent exists here.

Senator Grassley asserts that rejection of plaintiffs' position would have "significant adverse consequences" for the federal Treasury, Sen. Grassley Br. at 2, but until recently, no plaintiff had ever brought an MSP action asserting an unadjudicated tort claim except against these defendants. *See Mason* slip op., at 2; *Mason v. Am. Tobacco Co.*, 346 F.3d 36, 42-43 (2d Cir. 2003); *Glover*, 380 F. Supp. 2d at 1290-91; *United States v Philip Morris, Inc.*, 156 F. Supp. 2d 1, 7-8 (D.D.C. 2001) ("*Philip Morris II*"). In the absence of clear expression of congressional intent, courts have long refused to infer a new monetary remedy for the federal government simply to increase its revenue. *See United States v. Gilman*, 347 U.S. 507, 511 (1954); *United States v. Standard Oil*

2

*Co.*, 332 U.S. 301 (1947).  Because no such intent exists here, "this Court and others should withhold the creative touch." *Standard Oil*, 332 U.S. at 317.

## ARGUMENT

### I. THE TEXT, STRUCTURE, AND HISTORY OF THE MSP REFUTE SENATOR GRASSLEY'S INTERPRETATION OF THE STATUTE

Nothing in the text, structure, or history of the MSP, including its 2003 amendment, demonstrates that Congress intended to authorize a plaintiff (who is not even a Medicare beneficiary) to recover double damages from a defendant who has never been found liable for paying Medicare costs.  *See* Mem. of Law in Supp. of Defs.' Mot. to Dismiss or Transfer ("Defs.' Mem.") at 13-20; Reply Mem. of Law in Supp. of Defs.' Mot. to Dismiss or Transfer ("Defs.' Reply") at 3-15.

#### A. The Text And Structure Of The MSP Refute Senator Grassley's Interpretation Of The Statute

The critical statutory text is the provision establishing that a "primary plan's" responsibility for reimbursing Medicare "may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release . . . or by other means." 42 U.S.C. § 1395y(2)(B)(ii); *see* Sen. Grassley Br. at 5-6.[2]  Senator Grassley essentially

---

[2]  Senator Grassley repeats United Seniors' argument that Congress' use of the present subjunctive tense "if it is demonstrated" that the primary plan "has or had" a responsibility to reimburse Medicare and failed to do so somehow reveals that Congress intended to permit an MSP plaintiff to demonstrate a defendant's responsibility to pay Medicare by proving the underlying tort in the MSP case itself.  *See* Sen. Grassley Br. at 5 n.2.  As Defendants have explained, the thing that must be "demonstrated" in an MSP double-damages action is not the underlying tort, but the defendant's pre-existing established responsibility to pay and the failure to discharge that responsibility.  *See* Defs.' Reply at 8-9.  Congress properly used the present tense to require the plaintiff to "demonstrate" the failure to satisfy a responsibility to pay Medicare.

argues that "by other means" should be read to mean "by *any* means," and that the term "judgment" includes a "judgment *in an MSP case*." *Id.*

As defendants demonstrated in their opening brief (and will not repeat here), and the *Glover* court specifically found, the Senator's interpretation of "by other means" runs afoul of well-established canons of statutory construction and other legal doctrines. *See* Defs.' Mem. at 16-19; Defs.' Reply at 13-16. The Senator's interpretation of the word "judgment," however, is brand new. Although Senator Grassley filed *amicus* briefs before the Second Circuit in *Mason*, the district court in *Glover*, and the Eleventh Circuit in *Glover*, he has not until now suggested that the word "judgment" should be read and rewritten to mean "judgment in an MSP case." This argument appears to be nothing more than the *post hoc* argument of counsel.

In any event, Senator Grassley's interpretation cannot be squared with other provisions of the statute. He asserts that United Seniors may adjudicate its underlying tort claim *as part of* its MSP claim. The MSP and its implementing regulations, however, provide that a party has 120 days to reimburse Medicare after its responsibility is first established. 42 C.F.R. § 411.50(b). Only if the party fails to make a payment during that 120 day period does a claim arise for double damages. *See* 42 U.S.C. § 1395y(b)(2)(B)(iii). Congress could not have intended to authorize a plaintiff to combine an unadjudicated tort claim with an MSP double damages action because the MSP action does not arise until *after* the defendant is found liable on the tort claim and then fails to make payment to Medicare within 120 days. At the end of the day, Senator Grassley fails to explain how an alleged tortfeasor could possibly be held liable for failing to pay a

4

judgment within 120 days if that judgment is obtained in the same proceeding and at the same time that MSP liability is to be established.

Senator Grassley also is incorrect that "there is no principled line distinguishing" a judgment, settlement, administrative ruling, or arbitrator's ruling "from the . . . 'other means' that Plaintiffs have elected to use in this action." Sen. Grassley Br. at 5. The "principled line" arises directly out of the nature of MSP's double-damages cause of action. Because the essence of such a cause of action is the primary plan's failure to pay Medicare, no such cause of action can arise until the primary plan has the responsibility to make such a payment in the first place. The Medicare cause of action, therefore, is based on the primary plan's *pre-existing* responsibility to pay Medicare and the failure to discharge that responsibility. The "principled line" that is patently clear from the face of the MSP, therefore, is that the plaintiff must establish some event – such as a judgment or release or compromise – that would trigger the defendant's responsibility for Medicare costs *before the MSP lawsuit is filed*. This is precisely the principled line that the *Glover* court correctly drew. *See Glover*, 380 F. Supp. 2d at 1294-95.[3]

Finally, Senator Grassley repeats throughout his brief that the purpose of the MSP is to ensure that Medicare obtains reimbursement from those entities responsible for a Medicare beneficiary's medical costs. *See* Sen. Grassley Br. at 3, 16-18. That, no doubt,

---

[3]   Senator Grassley complains that, because of the "glacial pace of litigation in many American jurisdictions," the government may have to wait several years before it ultimately obtains reimbursement from a primary plan that is required to reimburse Medicare. Sen. Grassley Br. at 7. But that is true of every litigant. For that reason, states allow a successful plaintiff to recover post-judgment interest, which generally pays the plaintiff an above-market interest rate on the judgment from the time the judgment is entered until the time the judgment is paid. *See*, *e.g.*, Cal. Civ. Code § 3291 (awarding post-judgment interest at a rate of 10% annually).

5

is the purpose of the statute. The issue presented here, however, is *how* Congress chose to effectuate that purpose. It is clear, for example, that Congress expressly created for the federal government the right to sue a tortfeasor for single damages in subrogation and to intervene in any tort suit brought or settlement obtained by a private Medicare beneficiary. *See* 42 U.S.C. § 1395y(b)(2)(B)(iv). Such a subrogation cause of action would be meaningless if Congress also intended to create a cause of action for double damages against the same tortfeasor for the same conduct. Although Congress acted to achieve the goal of having a primary plan pay its share of the costs, Congress did not authorize every imaginable means to achieve this end. Rather, the means that Congress intended were expressly spelled out in the statute, and those means do not include lawsuits such as this one. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 261 (1993) (general statements about the policy purpose of a statute "are nonetheless inadequate to overcome the words of its text regarding the *specific* issue under consideration").

### B. The Legislative History Of The MSP Refutes Senator Grassley's Interpretation Of The Statute

Senator Grassley argues that the purpose of the 2003 amendments was to reverse the Second Circuit's decision in *Mason*. *See* Sen. Grassley Br. at 1. But that supposed purpose is not mentioned anywhere in the amendments' legislative history. Nor does the legislative history mention *Philip Morris II*,[4] the other pre-amendment case in which the court held that the MSP does not authorize a double-damages claim against these defendants.

---

4   156 F. Supp. 2d at 7-8.

6

Contrary to Senator Grassley's argument, the legislative history makes clear that the purpose of the amendments was to allow Medicare to obtain reimbursement from *settlement* funds. *See* Defs.' Mem. at 6-11. Thus, the House Report on the amendments expressly stated that their purpose was to overrule *Thompson v. Goetzmann*, 337 F.3d 489 (5th Cir. 2003), in which the Fifth Circuit held that the MSP did not allow Medicare to seek reimbursement from a settlement fund. *See* H.R. Rep. No. 108-178(II), at 189 (2003), *available at* 2003 WL 21690538 ("Recent court decisions such as *Thompson v. Goetzmann* resulted in a narrow interpretation of the statutory reference to 'promptly.' Liability insurers would have been able to draw out their settlements and avoid repaying Medicare for payment of medical expenses."). Similarly, the Department of Justice submitted a letter in support of the proposed amendments that also stated that the purpose of the amendments was to reverse *Goetzmann*, which rejected the government's efforts to assert an MSP claim against settlement funds:

> [The proposed amendments] would protect the integrity of the Medicare Trust Fund by clarifying that Medicare must be reimbursed whenever another insurer's responsibility to pay has been established. The Section is consistent with the litigation positions taken by this Department and the Department of Health and Human Services in numerous court cases. . . . Some recent court decisions have held, however, that Medicare has no right to reimbursement. . . . *See*, *e.g.*, *Thompson v. Goetzmann*, 315 F.3d 457 (5th Cir. 2002). These rulings make the statute's reimbursement mechanism inoperative in some jurisdictions. Section 301 of this legislation would end this costly litigation and provide clear legislative guidance regarding Medicare's status as a secondary payer of health benefits.

149 Cong. Rec. S8499-02, S8,535 (2003).[5] Notably, the letter emphasized the need for "insurers" to reimburse Medicare whenever the "responsibility to pay *has been established*." *Id.*[6]

The only piece of legislative history that Senator Grassley cites is his non-controversial statement that Congress intended for self-insured tortfeasors to be primary payers to Medicare. *See* Sen. Grassley Br. at 8 (citing 149 Cong. Rec. S15585 (Nov. 22, 2003)). The issue here, however, is the *means* by which Congress intended to effectuate that purpose. As the district court in *Glover* recognized, "there is no statement anywhere in the legislative history indicating that the amendments were meant to subject an alleged tortfeasor . . . to a private right of action under the MSP for double damages." *Glover*, 380 F. Supp. 2d at 1297.

Senator Grassley asserts that one cannot expect an "extensive legislative record" reflecting United Seniors' interpretation of the statute. Sen. Grassley Br. at 8. The problem here, however, is that the legislative record supporting United Seniors' interpretation is *totally nonexistent*. Senator Grassley underestimates the radical sea change that his interpretation of the MSP would have on the balance of responsibility

---

[5] This letter is consistent with testimony by a spokesman for the Department of Justice in support of the amendments. *See Waste, Fraud, and Abuse in Federal Programs: Hearing before the House Comm. on Ways and Means*, 108th Cong. (2003) (Statement of William H. Jordan), *available at* 2003 WL 21667339 (noting that the amendments were intended to correct *Goetzmann*).

[6] The MSP's 2003 amendments were a very small portion of the landmark bill in which Congress created prescription drug coverage for Medicare beneficiaries. *See Glover*, 380 F. Supp. 2d at 1295. "[W]hile the legislative history of the [amendments] is voluminous," there is "only scant legislative history addressing the . . . amendments to the MSP." *Id.* As noted above, the legislative history that does exist sets out clearly that

between federal and state courts. Under his view of the MSP, any tort claim could be brought in federal court so long as the injured victim were a Medicare recipient, without any showing of diversity, jurisdictional amount, or federal question jurisdiction (other than the MSP). Given that there are at least 41 million Medicare recipients in this country, the result of Senator Grassley's interpretation would be an enormous migration of everyday state tort suits from state to federal court because plaintiffs could obtain double damages if they brought their claim in federal court. Ordinarily, if Congress wishes to bring about such a significant alteration of the federal-state relationship, it must make its intentions "unmistakably clear." *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 543 (2002) ; *accord Gregory*, 501 U.S. at 460-61. Here, there is not even a scintilla of evidence of such intent. If Senator Grassley and Congress had intended the 2003 amendments to change the result in *Mason*, someone would have at least mentioned the *Mason* decision during the congressional hearings or the floor debate or expressed the desire to expand the MSP to authorize unproven claims against alleged tortfeasors. At the very least, one would expect the Department of Justice to have mentioned the need to overturn *Mason* instead of focusing exclusively on the *Goetzmann* decision and the need to assert MSP claims against settlement funds. *See Glover*, 380 F. Supp. 2d at 1297; *see also Chisom v. Roemer*, 501 U.S. 380, 396 n.23 (1991).[7]

---

the purpose of the bill was to reverse the decision in *Goetzmann*, not to adopt Senator Grassley's radical version of the statute.

[7] Senator Grassley repeats United Seniors' arguments that defendants' reading of the MSP and its 2003 amendment would render the MSP "trivial and seldom (if ever) utilized." Sen. Grassley Br. at 17. Defendants have already addressed this argument twice. *See* Defs.' Mem. at 20; Defs.' Reply at 13-14. Like plaintiff, Senator Grassley ignores that the MSP authorizes, for example, a private cause of action for double

9

Senator Grassley responds that United Seniors' interpretation of the statute would not work a change in federal-state relations because the MSP "is profoundly – and exclusively – *federal* business." Sen. Grassley Br. at 16 (emphasis in original). To be sure, a primary plan's failure to reimburse Medicare when it is required to do so is federal business and the essence of the MSP's double damages action. However, the adjudication of a contested battery claim such as the one asserted here is state business and involves an area of the law traditionally governed by the States. In setting forth the requirements of diversity jurisdiction, Congress has clearly delineated when such claims may be brought in federal court. Unless these requirements are met, Congress has mandated that federal courts not provide a forum for adjudicating state-law claims.

Finally, it is well established that, when Congress intends to create a new monetary remedy that would enrich the federal Treasury, it must do so expressly. *See Gilman*, 347 U.S. at 511; *Standard Oil*, 332 U.S. 301. Congress, not the courts, is the "custodian of the national purse" and thus has the power to create a remedy for the government whenever it so desires. *Standard Oil*, 332 U.S. at 314-15. Courts, therefore, should not imply monetary remedies on behalf of the federal treasury in the absence of an express intention by Congress because "Congress [is] normally quite solicitous where the federal purse [is] involved," *Bivens v. Six Unknown Named Agents of the Federal Bureau*

---

damages against a defendant who paid a judgment or settlement to a Medicare beneficiary, but failed to pay Medicare its share, as was the case in *United States v. Baxter Int'l, Inc.*, 345 F.3d 866 (11th Cir. 2003), and *Goetzmann*, 337 F.3d 489. *See* 149 Cong. Rec. at S8,535; 42 C.F.R. § 411.24(i). Likewise, the MSP double damages provision fills gaps in state law that might allow an adjudicated tortfeasor to avoid reimbursing Medicare. Finally, the MSP is certainly still not trivial with regards to unadjudicated, unliquidated, torts as the government can always bring a subrogation action against a tortfeasor. *See* 42 U.S.C. § 1395y(b)(2)(B)(iv).

10

*of Narcotics*, 403 U.S. 388, 396 (1971), and because doing so would raise "important questions of fiscal policy" that are "more appropriately for those who write the laws, rather than for those who interpret them." *Gilman*, 347 U.S. at 510-13. The absence of any expression – or even suggestion – by Congress that it intended to create a double-damages action against a mere alleged tortfeasor further refutes Senator Grassley's interpretation of the statute.

## II. UNITED SENIORS DOES NOT HAVE STANDING TO ASSERT ANY MSP CLAIM, MUCH LESS ONE THAT DUPLICATES THE FEDERAL GOVERNMENT'S MSP CLAIM AGAINST THESE SAME DEFENDANTS

Senator Grassley's various attempts to find constitutional and statutory standing are similarly unavailing. He asserts that United Seniors has Article III standing because the MSP's double-damages bounty "gives United Seniors the concrete stake in the outcome required for standing." Sen. Grassley Br. at 10. But the very case that Senator Grassley cites for support, *Vermont Agency of Nat'l Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000) (cited at Sen. Grassley Br. at 10), in fact refutes his argument. In the very paragraph from which the Senator quotes, the *Vermont Agency* Court squarely held that the potential receipt of a bounty from a successful suit is "[a]n interest unrelated to injury in fact [and thus] insufficient to give a plaintiff standing." *Id*. The MSP's double-damages bounty, therefore, cannot confer Article III standing on United Seniors.

Senator Grassley also argues that United Seniors has constitutional standing as a partial assignee of the federal government and can maintain this suit despite the federal government's MSP suit against these same defendants. *See* Sen. Grassley Br. at 11. This is so, according to the Senator, because the mere "possibility of a government MSP action" would not bar a partial assignee from suing. *Id*. Here, however, the prospect of a government suit is not just a mere "possibility." *The government already has sued these*

11

*defendants for the exact same Medicare costs that United Seniors seeks to recover*. The government's MSP claim, although dismissed, is still subject to appeal. But, regardless of whether the government appeals, its suit bars any and all of its supposed assignees from suing for these same Medicare costs. *See* Defs.' Reply at 15-16. It is well-established that a suit by an assignor bars a subsequent suit by its assignee for the same damages. *See* 6 Am. Jur. 2d *Assignments* § 144; *see City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 228 (1st Cir. 1998).

With respect to the issue of statutory or prudential standing, Senator Grassley contends that "it is beyond dispute that the MSP authorizes actions by private attorneys general acting as whistleblowers." Sen. Grassley Br. at 10. However, he fails to cite support for this supposedly indisputable point. Senator Grassley does not cite a single case in which a court has allowed a private MSP claim by someone other than the allegedly injured Medicare victim and does not cite anything in the text of the MSP that purports to confer standing on such persons. *See Frazer v. CNA Ins. Co.*, 374 F. Supp. 2d 1067, 1077-78 (N.D. Ala. 2005) (dismissing an MSP claim because plaintiff lacked standing). Absent an expression of legislative intent to confer special standing on someone having absolutely no connection to the allegations of the lawsuit, the rules of prudential standing apply and preclude United Seniors from bringing this action. *See* Defs.' Mem. at 26-28; Defs.' Reply at 16-18.

## CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiff's claims or transfer this case to the United States District Court for the Middle District of Florida.

Respectfully submitted,

| **R.J. REYNOLDS TOBACCO COMPANY** | **PHILIP MORRIS USA INC.** |
|---|---|
| /s/ Thomas E. Peisch<br>Thomas E. Peisch (BBO #393270)<br>CONN KAVANAUGH ROSENTHAL<br>PEISCH & FORD LLP<br>Ten Post Office Square<br>Boston, MA 02109<br>(617)482-8200 | /s/ Michael K. Murray<br>Michael K. Murray (BBO #563804)<br>GOODWIN PROCTOR<br>Exchange Place<br>53 State Street<br>Boston, MA 02109<br>(617)570-1000<br>(617)523-1231 (fax) |
| **LIGGETT GROUP, INC.** | Murray R. Garnick<br>Robert A. McCarter<br>ARNOLD & PORTER LLP<br>555 12th Street NW<br>Washington, DC 20004<br>(202)942-5000<br>(202)942-5999 (fax) |
| /s/ Patricia A Hartnett<br>Patricia A. Hartnett (BBO #568206)<br>CORNELL & GOLLUB<br>75 Federal Street<br>Boston, Massachusetts 02110<br>Phone: (617) 482-8100 | |
| | **LORILLARD TOBACCO COMPANY, INC.** |
| **BROWN & WILLIAMSON TOBACCO CORP., Individually and as the successor to AMERICAN TOBACCO CO.** | /s/ Scott E. Erlich<br>Scott E. Erlich (BBO #637202)<br>NUTTER, MCCLENNEN & FISH LLP<br>World Trade Center West<br>155 Seaport Boulevard<br>Boston, MA 02210-2604<br>(617)439-2965 |
| /s/ Thomas E. Peisch<br>Thomas E. Peisch (BBO #393270)<br>CONN KAVANAUGH ROSENTHAL<br>PEISCH & FORD LLP<br>Ten Post Office Square<br>Boston, MA 02109<br>(617)482-8200 | Gay Tedder<br>Andrew Carpenter<br>SHOOK, HARDY & BACON LLP<br>2555 Grand Boulevard<br>Kansas City, Missouri 64108-2613<br>(816) 474-6550 |

Dated: January 23, 2006
LIBA/1668498.1

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 23, 2006.

                                                */s/ Michael K. Murray*
                                                Michael K. Murray