UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-11623-RGS

UNITED SENIORS ASSOCIATION, INC.,
as a private attorney general

v.

PHILIP MORRIS USA, R.J. REYNOLDS TOBACCO
COMPANY, BROWN & WILLIAMSON TOBACCO CORPORATION,
individually and as the successor to THE AMERICAN
TOBACCO COMPANY, LORILLARD TOBACCO
COMPANY, INC., and LIGGETT GROUP, INC.

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS OR TRANSFER

August 28, 2006

STEARNS, D.J.

BACKGROUND

Plaintiff United Seniors Association, Inc. (United Seniors), undertook this litigation as a "private attorney general," a status authorized by the Medicare as Secondary Payer (MSP) law, 42 U.S.C. § 1395y(b)(3)(A). Defendants are manufacturers and sellers of tobacco products. United Seniors seeks, on behalf of the federal Medicare program, to recover medical expense reimbursements made by Medicare since August 4, 1999, to treat Medicare recipients for illnesses attributable to cigarette smoking.

United Seniors is a nationwide nonprofit "taxpayer protection" association claiming a membership of some 1.5 million older Americans. United Seniors states that its mission is to "safeguard the Social Security Trust Fund" and the "financial integrity of Medicare." Complaint ¶ 8. In its Complaint, United Seniors alleges that the defendants are self-

insured MSP "primary plans" who have "battered" Medicare beneficiaries by exposing them to the addictive evils of nicotine.[1]

Defendants move to dismiss the Complaint on three grounds. First, they argue that they have never been found liable, nor have they ever assumed responsibility for the medical bills that United Seniors seeks to recover; second, they argue that United Seniors has no constitutional or statutory standing to bring this action; and third, that because United Seniors is in "privity" with the plaintiffs who brought suit in Glover v. Philip Morris USA, 380 F. Supp. 2d 1279 (M.D. Fla. 2005), it is collaterally estopped from relitigating the issue of whether defendants are "responsible or required" to make payments to Medicare.[2] The motion to dismiss was argued on June 29, 2006.

## DISCUSSION

Medicare acts as a "secondary insurer" for older Americans.[3] If a beneficiary has primary medical insurance, the private insurer – and not Medicare – is the payor of first resort. Because the existence of primary coverage may not be known when a patient is treated, the MSP authorizes Medicare to make "conditional" payments on behalf of the primary plan insurer. 42 U.S.C. § 1395y(b)(2)(B)(i). "Primary plans" include group healthcare plans, "workmen's compensation law[s] or plan[s]," "liability insurance polic[ies]

---

[1]Although "battered" may seem an odd expression under the circumstances, the action is brought on a common-law theory of tort.

[2]In the alternative, defendants ask that this case be transferred to the Middle District of Florida to be consolidated with the Glover action.

[3]The mechanism by which Medicare acts as a secondary payer is thoroughly explained in Mason v. American Tobacco Co., 346 F.3d 36, 38 (2d Cir. 2003).

or plan[s]," and "self-insured plan[s]." 42 U.S.C. § 1395y (b)(2)(A)(ii). If Medicare makes a conditional payment on behalf of a primary plan that is "required or responsible . . . to make payment," Medicare may seek reimbursement from the primary plan. 42 U.S.C. § 1395y(b)(2)(B)(iii). See Mason, 346 F.3d at 38; Glover v. Philip Morris USA, 380 F. Supp. 2d 1279, 1282 (M.D. Fla. 2005).

MSP liability (double damages) attaches when a primary plan fails to make payment "promptly," that is, within 120 days of a claim being filed or a service being rendered. See Glover, 380 F. Supp. 2d at 1290; 42 C.F.R. § 411.50(b). If the Medicare beneficiary on whose behalf a conditional payment is made has a tort claim, Medicare may seek reimbursement from the tortfeasor's insurance carrier, but only "after, and to the extent that, such carrier's liability under the [tortfeasor's] private policy for the services has been determined." 54 Fed. Reg. 41,716-01 at 41,727 (Oct. 11, 1989). See also 42 C.F.R. § 411.52(a). The same rules apply when the tortfeasor has internalized the insurance function by creating a "self-insured plan."

This case is a reprise of claims against the tobacco industry brought by the federal government in the late 1990's seeking to recoup Medicare costs incurred in treating smoking-related illnesses. See United States v. Philip Morris Inc., 156 F. Supp. 2d 1 (D.D.C. 2000) (Philip Morris II); see also Philip Morris, 116 F. Supp. 2d 131 (D.D.C. 2000) (Philip Morris I). These efforts by the government came largely to naught, with most courts rejecting the government's various theories of tobacco company liability. See e.g., Philip Morris II, 156 F. Supp. 2d at 7-8: "The practical effect of the Government's conception of MSP liability would transform [the MSP], meant primarily for use against insurers, . . . into

the very 'across-the-board procedural vehicle for suing tortfeasors' which this Court has already declared impermissible."

In <u>Mason v. American Tobacco Co.</u>, representatives of a nascent class of Medicare beneficiaries brought a private suit against the same defendants in this action based on the same failed interpretation of the MSP advanced by the government. The district court dismissed the case. See <u>Mason</u>, 212 F. Supp. 2d 88 (E.D.N.Y. 2002).[4] On appeal, the Second Circuit affirmed the district court on two separate grounds: (1) that the defendants' liability for Medicare costs had not been "established" for MSP purposes; and (2) that the defendants were not "self-insured plans" within the meaning of the MSP.[5] See <u>Mason</u>, 346 F.3d at 42-43.

On the heels of the <u>Mason</u> decision, Congress enacted, and the President signed into law, the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA), amending the MSP. The MMA broadened the definition of "primary plan" to include "[a]n entity that engages in a business, trade, or profession . . . if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part." The MMA also redefined the circumstances in which "primary plan" liability under the MSP attached.

> A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the beneficiary's compromise, waiver, or release (whether or not there is a determination or admission of

---

[4]The proposed class of Medicare beneficiaries in <u>Mason v. American Tobacco Co.</u>, were represented by the same counsel who represent United Seniors in this case.

[5]In <u>United States v. Baxter Int'l, Inc.</u>, 345 F.3d 866 (11th Cir. 2003), the court held that a corporate defendant could be deemed a self-insured plan where it had created a mass tort settlement fund "assum[ing] responsibility and liability" for Medicare beneficiaries' tort related medical expenses. <u>Id.</u> at 895-897.

4

> liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, *or by other means.*

42 U.S.C. § 1395y(2)(B)(ii) (emphasis added). Congress also declared that it intended the MMA amendments to apply retroactively. See H.R. 1 (108th Cong.) § 301(d)(1) (2003).

Under the MSP, a "primary plan . . . shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan *has or had a responsibility to make payment with respect to such item or service.*" 42 U.S.C. § 1395y(b)(2)(B)(ii) (emphasis added). A "primary plan's" responsibility for reimbursing Medicare "may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release . . . of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." Id. See 42 U.S.C. §§ 1395y(b)(2)(B)(iii) & (3)(A).

Defendants argue that the condition precedent for bringing an MSP claim is not the pendency of a disputed tort claim, but rather an "established obligation" to pay Medicare costs.

> Under the plain text of the statute, defendants are not subject to suit under the MSP unless and until they are found responsible for Medicare costs and they fail to reimburse Medicare within 120 days after that responsibility first arises. 42 C.F.R. § 411.50(b). An alleged tortfeasor cannot be liable for failing to make a payment that it has no requirement to make. See Glover, 380 F. Supp. 2d at 1295 ("[T]he new amendments . . . do not alter the principle, previously recognized, that MSP liability attaches only to an entity that is required or responsible to pay under a primary plan, a principle inapplicable to the alleged tortfeasors in this case." (citation and internal quotation marks omitted)). . . . It would allow a Medicare beneficiary injured

> by any product – ranging from a coffeemaker to asbestos – to bring a tort claim against the corporate manufacturer in federal court to recoup double damages. Because such a claim would be brought under the auspices of the MSP, it would be within the federal jurisdiction of this Court; no showing of diversity or jurisdictional amount would be required.

Defendants' Memorandum, at 14-15.

United Seniors maintains that neither the statute nor the regulatory history supports the defendants' "two-lawsuit" theory that no MSP reimbursement action may be brought without first obtaining a judgment against a defendant or some other form of legally binding obligation to pay.

> If Congress had intended that an MSP action could be brought only after a previous adjudication of third party responsibility, the legislation would have been written in the past perfect subjunctive tense – i.e., a primary plan would be required to reimburse Medicare only "if it *had been demonstrated* that such primary plan is responsible." Congress's decision to use the present subjunctive tense ("if it is demonstrated") conveys the idea that the demonstration of third-party liability need not have been accomplished before the MSP action can be pursued; it can occur during the MSP action itself.

Plaintiff's Opposition Memorandum, at 15. By way of analogy, United Seniors argues that a plaintiff suing for malicious prosecution need not establish malice in a separate lawsuit, nor must the false character of a claim under the federal False Claims Act be independently proven before a qui tam lawsuit can be brought.[6]

> Even applying *ejusdem generis*, a judgment in an MSP action *is* a judgment (the statute says nothing about pre-existing), and so need not be shoe-horned into "other means." Read in this straightforward way, an MSP responsibility to pay can be demonstrated by an MSP judgment.

Id. at 19.

---

[6]This is true, but somewhat irrelevant to an interpretation of a comprehensive and self-defining statute like the MSP.

In <u>Glover</u>, relying on these same arguments, plaintiffs sought to recover smoking-related expenditures incurred by Medicare in Florida. The arguments were rejected by the district court, and after argument was heard on this motion, by the Eleventh Circuit on appeal. <u>See</u> <u>Glover v. Liggett Group, Inc.</u>, __ F.3d __, 2006 WL 2336587 (C.A.11 (Fla., Aug. 14, 2006). The Eleventh Circuit agreed with the district court that "an alleged tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated *before* an MSP private cause of action for failure to reimburse Medicare can correctly be brought under § 1395y(b)(3)(A)." Any contrary interpretation of the MSP would, according to the Eleventh Circuit, radically impact on the allocation of jurisdiction between the federal and state courts and on traditional considerations of due process

> by creating a federal forum to litigate any state tort claim in which a business entity allegedly injured a Medicare beneficiary, without regard to diversity of citizenship or amount in controversy. Second, under Plaintiffs' interpretation, an alleged tortfeasor that is sued under the MSP (instead of under state tort law) could not contest liability without risking the penalty of double damages: defendants would have no opportunity to reimburse Medicare after responsibility was established but before the penalty attached. Third, Plaintiffs' proposed interpretation would allow individuals acting as private attorney generals to litigate the state tort liability of a defendant towards thousands of Medicare beneficiaries – as a predicate to showing MSP liability – without complying with class action requirements. We are confident that, if Congress intended such radical innovations in jurisdiction, federal-state relations, and tort liability, it would have more clearly expressed its intent.

Glover, 2006 WL 2336587, *3 (11th Cir.(Fla.)).[7]  See  Gregory v. Ashcroft, 501 U.S. 452, 460 (1991).

---

[7]The court acknowledges the amicus brief filed on behalf of U.S. Senator Charles Grassley.  While I found the brief informative, I agree with Judge Corrigan (to whom the same brief was presented), that its fundamental argument is inconsistent with the legislative history of the MSP.  Glover, 380 F. Supp. at 1298.  The court also acknowledges the letters written by the parties alerting the court to the encyclopedic opinion of Judge Kessler in United States of America v. Phillip Morris, 2006 WL 2380622 (D.D.C. Aug. 17, 2006) (Part 1); 2006 WL 2380632 (Part 2), 2006 WL 2380648 (Part 3), 2006 WL 2381449 (Part 4), 2006 WL 2380650 (Part 5), and 2006 WL 2380681 (Part 6).  Given the enormous length of Judge Kessler's opinion, I cannot claim to have done more than skim its contents for a sighting of any findings that might be relevant to this case.  As I can see none, there is no reason to delay this decision (as plaintiff suggests).

## ORDER

Relying on the jurisprudential grounds and statutory reasoning expounded by the Eleventh Circuit in Glover, the court will ALLOW defendants' motion to dismiss the Complaint. The motion to transfer is MOOT.

SO ORDERED.

s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE